**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PETER GABIOLA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 14-cv-9351 |
| | ) | |
| MUGSHOTS.COM, LLC, a Delaware Limited | ) | |
| Liability Company; JOKULSA LAEKUR LLC | ) | |
| d/b/a "Mugshots.com"; JULKISUUDESSA, LLC; | ) | |
| OPENBARE DIENST INTERNATIONALE, LLC; | ) | |
| UNPUBLISH, LLC, an Australia Limited Liability | ) | |
| Company; UNPUBLISH, LLC, a Florida Limited | ) | *JURY DEMANDED* |
| Liability Company; UNPUBLISH, LLC, a | ) | |
| Wyoming Limited Liability Company; | ) | |
| HAMMERMILL & MASTERSON LLC d/b/a | ) | |
| Unpublisharrest.com, a Wyoming Limited Liability | ) | |
| Company; HAMMERMILL & MASTERSON LLC d/b/a | ) | |
| Unpublisharrest.com, a Florida Limited Liability Company; | ) | |
| WILLIAM FOWLER; THOMAS KEESEE; | ) | |
| MARC GARY EPSTEIN; GARY DECKER; | ) | |
| AXEL OSTLUND; CHARLES WINSLOW; and | ) | |
| MICHAEL ROBERTSON a/k/a MICHAEL J. | ) | |
| ROBERTSON, | ) | |
| | ) | |
| *Defendants.* | ) | |

## CLASS ACTION COMPLAINT AT LAW AND EQUITY

Plaintiff PETER GABIOLA ("Plaintiff"), on behalf of himself and all others similarly

situated, by and through his attorneys, Berton N. Ring, P.C., hereby complains and alleges against

Defendants, MUGSHOTS.COM, LLC, a Delaware Limited Liability Company; JOKULSA

LAEKUR LLC d/b/a "Mugshots.com"; JULKISUUDESSA, LLC; OPENBARE DIENST

INTERNATIONALE, LLC; UNPUBLISH, LLC, an Australia Limited Liability Company;

UNPUBLISH, LLC, a Florida Limited Liability Company; UNPUBLISH, LLC, a Wyoming

Limited Liability Company; HAMMERMILL & MASTERSON LLC d/b/a Unpublisharrest.com,

a Wyoming Limited Liability Company; HAMMERMILL & MASTERSON LLC d/b/a Unpublisharrest.com, a Florida Limited Liability Company; WILLIAM FOWLER; THOMAS KEESEE; GARY DECKER; AXEL OSTLUND; CHARLES WINSLOW; MARC GARY EPSTEIN; and MICHAEL ROBERTSON a/k/a MICHAEL J. ROBERTSON, as follows:

## PRELIMINARY STATEMENT

Defendants herein own and operate the websites "mugshots.com," "unpublish.com," and "unpublisharrest.com." Mugshots.com uses software programs called "spiders" to take screenshots of online arrest records posted by state and federal corrections departments, and obtains other information by filing requests under federal and state Freedom of Information Acts. The Defendants then post that information, complete with pictures of arrestees, to mugshots.com, and use analytics and search optimization to ensure that their site is among the first results found when the arrestee's name is entered into a search engine such as Google. However, Defendants make no effort to ensure the information posted to mugshots.com is up to date or accurate, leading to out of date information indicating that people are still charged, incarcerated, or on parole years after release or an adjudication of not guilty.

Defendants advertise on their website that they are willing to correct or remove the incorrect information and pictures – but mugshots.com will only do so for a fee ranging from $398 to as much as $2,000 *per person*. Moreover, Defendants will often not remove or correct the information and picture even after receiving payment. The Defendants will only "guarantee" the removal of the information if the arrestee uses, and pays an additional fee up to $1,000, to the Defendants' sister sites, "unpublish.com" or "unpublisharrest.com." Defendants market "unpublish.com" and "unpublisharrest.com" as independent reputation management firms, but in

reality they are owned, operated, and staffed by the same people who own and operate mugshots.com.

This action seeks to put an end to the extortionist practices of Defendants, and vindicate the right of publicity and reputations of the Plaintiff and members of the classes.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to diversity jurisdiction, 28 U.S.C. §1332 of the Federal Code of Civil Procedure, as complete diversity exists between the Plaintiff and all Defendants.

2. This Court has supplemental jurisdiction over the Plaintiff's remaining state law claims pursuant to 28 U.S.C. §1367, as all claims brought herein arise out of a single transaction or occurrence.

3. Venue is proper pursuant to 28 U.S.C. §1391, as events complained of herein occurred in the Northern District of Illinois.

## THE PARTIES

4. Plaintiff Peter Gabiola ("Plaintiff" or "Gabiola") is a natural person and resident of Illinois.

5. At all times herein relevant, Plaintiff was and is domiciled in Illinois.

6. Plaintiff is a former inmate with the Illinois Department of Corrections. On or about, July 27, 2012, Plaintiff exited parole.

7. Defendant Openbare Dienst Internationale, LLC ("Openbare") purports to be a Limited Liability Company organized under the laws of the island of Nevis in the West Indies.

8. Openbare does not provide an address or contact information in any public record.

9.  Openbare uses a domain name masking service, International Whois Privacy Services Limited ("WhoIs"), to prevent visitors to the Defendants' websites from tracing those websites' IP addresses.

10. At all times herein relevant, Openbare represented itself as an owner and/or operator of mugshots.com, unpublish.com, and/or unpublisharrest.com (the "subject matter websites").

11. Upon information and belief, Openbare is not, and has never been, a registered Limited Liability Company under the laws of any State in the United States.

12. Upon information and belief, Openbare is not, and has never been, authorized to be business under the laws of any State in the United States.

13. Defendant mugshots.com LLC ("Mugshots.com") is a Delaware Limited Liability Company organized under the laws of the state of Delaware.

14. Mugshots.com was organized after Defendant Michael Robertson purchased the subject matter websites in 2011 from Sahar Sarid.

15. At all times herein relevant, Mugshots.com was an owner and/or operator of one or more of the subject matter websites.

16. Defendant Unpublish, LLC ("Unpublish LLC") purports to be a Limited Liability Company organized under the laws of the island of Nevis in the West Indies.

17. Unpublish uses a WhoIs as a domain name masking service to prevent visitors to the Defendants' websites from tracing those websites' IP addresses.

18. Defendant Unpublish LLC also purports to be a Florida Limited Liability Company with its principal place of business in Florida.

19. Defendant Unpublish LLC also purports to be a Wyoming Limited Liability Company with its principal place of business in Minnesota.

20. According to records maintained by the Wyoming and Florida Secretaries of State, Unpublish LLC's registration in both States has been revoked.

21. At all times herein relevant, Unpublish LLC was owned by Defendant Hammermill & Masterson LLC.

22. According to public records, Unpublish LLC continues to operate in Florida and maintain its principal offices there.

23. At all times herein relevant, Defendant Hammermill & Masterson LLC purported to be a Wyoming Limited Liability Company with its principal place of business in Florida, and a Florida Limited Liability Company with its principal place of business in Florida.

24. At all times herein relevant, Unpublish LLC and Defendant Hammermill & Masterson LLC (collectively, "Unpublish" or "the Unpublish Defendants") owned and/or operated one or more of the subject matter websites.

25. Defendants Jokulsa Laekur LLC and Julkisuudessa, LLC (the "Nevis Companies") purport to be Limited Liability Companies organized under the laws of the island of Nevis in the West Indies.

26. The Nevis Companies were originally organized by Sahir Sarid as holding companies, and retain an ownership interest in one or more of the subject matter websites.

27. Defendant Michael Robertson a/k/a Michael J. Robertson ("Robertson") is a natural person and resident of the State of Florida.

28. At all times herein relevant, Robertson was an owner of each and every LLC defendant herein.

29. Defendant Marc Gary Epstein ("Epstein") is a natural person and resident of the State of Florida.

30. At all times herein relevant, Epstein represented himself as attorney for the subject matter websites, including writing cease and desist letters and appearing in court proceedings on behalf of the websites.

31. At all times herein relevant, Epstein was an owner of one or more of the LLC defendants herein.

32. Upon information and belief, the Nevis Companies and Openbare do not exist as actual business entities.

33. Defendants William Fowler ("Fowler") and Thomas Keesee ("Keesee") are natural persons and residents of the States of Florida and/or Wyoming.

34. Defendants Gary Decker ("Decker"), Charles Winslow ("Winslow"), and Axel Ostlund ("Ostlund") are natural persons and residents of the States of Florida and/or Minnesota.

35. Fowler, Decker, Winslow, Ostlund, Keesee, Epstein, and Robertson are collectively referred to herein as the "Individual Defendants."

36. Upon information and belief, all individual Defendants jointly own and/or operate the subject matter websites in Florida.

## <u>GENERAL ALLEGATIONS COMMON TO ALL COUNTS</u>

### *How the Websites Work*

37. The website Mugshots.com was founded by Sahar Sarid ("Sarid"), a non-party to this action, in or about 2008.

38. Sarid founded the two Nevis Companies to own and operate Mugshots.com.

39. In or around 2011, Robertson purchased Mugshots.com and the Nevis Companies from Sarid.

40. After purchasing Mugshots.com, Robertson founded two additional websites, Unpublisharrest.com and Unpublish.com.

41. Mugshots.com is a website that displays arrest record information, complete with photographs (the namesake "mugshots"), to anyone who searches for the name of the arrestee.

42. The information posted is not only for people convicted of a crime.

43. Defendants use software programs called "spiders" or "bots" to copy information from department of corrections websites.

44. For example, under Illinois law, the Illinois department of corrections ("IDOC") posts public records regarding inmates to the department of corrections website for so long as the inmates remain incarcerated or on parole.

45. As soon as an inmate leaves parole or completes his/her sentence, that information is removed from the IDOC website. That removal is required by Illinois law.

46. Defendants "scrape" the information from the department of corrections website for all or mostly all inmates and arrestees using spiders and bot programs.

47. They then post that information, even after the IDOC removes it from the IDOC website.

48. On several occasions before January 6, 2014, Defendants' bot programs overloaded the servers of the IDOC website and Cook County Sheriff's website, causing them to repeatedly crash.

49. Alternatively, Defendants file requests under federal, state, and local Freedom of Information Acts for inmate and arrest records. These requests are filed by Richardson or Epstein in their own names, using Florida addresses.

50. Defendants then scan and upload that information from those records, and post it, including photographs, to their website.

51. Defendants make little or no effort to update the information being posted to mugshots.com.

52. As a result, the information on mugshots.com is routinely out of date or inaccurate.

53. On information and belief, Defendants currently have posted to their website incorrect information regarding inmate or parole status for hundreds of thousands of persons nationwide.

54. Defendants do not correct this information, even where it falsely states that a person was found guilty of a particular crime or offense.

### *The Defendants Monetize Photographs of Unwilling Participants*

55. Defendants' sole business model is to monetize the arrest records and photographs posted on mugshots.com.

56. Defendants monetize these records in three ways.

57. Defendants do not request permission of any persons before posting their images to mugshots.com.

### Method 1: Advertising

58. First, Defendants sell advertising space on their websites through both embedded and pop-up advertising.

59. Defendants use IP tracing and cookies to tailor advertising to individual page viewers.

60. A link on mugshots.com provides a contact form for advertisers seeking advertising opportunities on mugshots.com.

**Method 2: Direct Payment for the Possibility of Removal of Images**

61. Second, Defendants charge visitors who wish to correct or remove information from mugshots.com.

62. Defendants post the following on each page of mugshots.com (boldface, capitalization, and emphasis original):

**DISCLAIMER NOTICE:  ALL ARE PRESUMED INNOCENT UNTIL PROVEN GUILTY IN A COURT OF LAW. PUBLISHED MUGSHOTS AND/OR ARREST RECORDS ARE PREVIOUSLY PUBLISHED PUBLIC RECORDS OF: AN ARREST, A REGISTRATION, THE DEPRIVATION OF LIBERTY OR A DETENTION. THE MUGSHOTS AND/OR ARREST RECORDS PUBLISHED ON MUGSHOTS. COM ARE IN NO WAY AN INDICATION OF GUILT AND THEY ARE NOT EVIDENCE THAT AN ACTUAL CRIME HAS BEEN COMMITTED. EVERY EFFORT IS MADE TO ENSURE THE ACCURACY OF INFORMATION POSTED ON THIS WEBSITE. HOWEVER, MUGSHOTS. COM DOES NOT GUARANTEE THE ACCURACY OR TIMELINESS OF THE CONTENT OF THIS WEBSITE. IN ADDITION NAMES MAY BE SIMILAR OR IDENTICAL TO OTHER INDIVIDUALS. FOR LATEST CASE STATUS, CONTACT THE OFFICIAL LAW ENFORCEMENT AGENCY WHICH ORIGINALLY RELEASED THE INFORMATION.**

**UNPUBLISHING NOTICE:  IF YOU WERE FOUND GUILTY; YOU STILL MAY QUALIFY TO BE UNPUBLISHED.**

63.  A link on each records page offers to correct inaccurate records or remove a photograph.

64. A visitor who clicks on the link is taken to a checkout page.

65. The checkout page lists various tiers of pricing for the number of corrections to be made or photographs to be removed.

66. These tiers range from $398 for one photograph to $2,000 or more for multiple photographs.

67. In small typeface below the checkout page, Defendants state that the payment does not guarantee removal of the photograph or record.

68. That statement includes the following: LICENSOR RESERVES THE RIGHT TO APPROVE OR DECLINE ANY APPLICATION IN ITS SOLE DISCRETION.

69. Defendants further state that they will not refund a payor's money if they choose to not remove the photograph or record.

70. Defendants also include purported terms of "sale" for each payment, as follows:

In consideration for receipt of a completed application acceptable to Licensor and stated appropriate fee for the amount of content being licensed, the Licensor ("The Mugshots. com Database") grants the Licensee ("Payee", "Publisher") a non-transferable license to Permanently Publish(1), Edit(2), or Halt Publication (Unpublish)(3) of one arrest record(s) per one paid application within Licensor's publicly-available database. The Limited License described herein must be used within 24 hours from issuance of the license. Once License is issued, Licensee may instruct Licensor and/or its agents to permanently publish or alternatively; halt publication (unpublish) of the chosen licensed content. Failure to use the limited license within the 24 hour term of the limited license shall be considered a waiver of rights and under no circumstance give rise to a claim for a refund of the license fee paid by licensee or its agents, assigns or successors. Licensor may revoke any license at any given time by issuing a full refund to Licensee. An application may be declined, or reversed, for any reason, by Licensor in its sole discretion. If a license is declined or reversed by Licensor, the Licensor shall issue a full refund of the fee charged. In the event of any dispute regarding the limited license described herein, the Licensee agrees that same shall be solely and exclusively resolved by mediation which shall be venued in Nevis, West Indies. In any event the limitation of liability arising from the transaction described herein shall be limited to the amount paid by Licensee, its agents, successors, or assigns for the limited license purchased by licensee.

The Publishing License herein may be used by victims (or other individuals) who may wish to ensure that a specific arrest record be accessible permanently within The Mugshots. com Database, arrestees (or other individuals) who may wish to halt publication

(unpublish) of a record for personal and/or professional reasons, or arrestees (or other individuals) who may wish to update a record to reflect latest case status.

71. Defendants state on their website that a payor must also independently request, in writing, that a photograph be taken down from the site within 24 hours of payment.

72. The Defendants state that the actual payment itself is insufficient for a record to be removed, and Defendants will not refund any monies if a photograph is not removed.

73. Defendants' terms of service requires a payor to agree that Defendants are granting a payor a limited license to use the payor's own likeness.

74. Payors who do not agree cannot have their images removed from the website.

**Method 3: Fake Reputation Management Firms**

75. Defendants' third method is the operation of a pair of sister sites, unpublish.com and unpublisharrest.com.

76. Defendants represent on these websites that they are a reputation management firm unaffiliated with mugshots.com.

77. Each website states, as follows:

> UnpublishArrest. com [sic] is comprised of experienced agents who are specialists in submitting licensing applications on behalf of it's [sic] clients to "The Mugshots. com Database" for permanent unpublishing, permanent publishing or editing of arrest records/mugshots contained within "The Mugshots. com Database. " We have learned through experience what it takes to successfully submit applications to "The Mugshots. com Database". We are the billing and customer service agent for The Mugshots. com Database. In most instances our submissions are successful for permanently unpublishing, permanently publishing or editing a public arrest record(s)/mugshot(s). The work is typically completed by the licensor within 24 hours.

78. In reality, both websites are owned and operated by the same persons and entities who operate mugshots.com.

79. Defendants state on these sister sites that they "offer a full 100% money back guarantee if your licensing application for permanent unpublishing, permanent publishing or editing is not accepted by The Mugshots. com Database."

80. People who submit an "application" to unpublish.com or unpublisharrest.com for removal of a record must also pay Defendants a separate "representation fee" in addition to the fees demanded by mugshots.com.

81. Defendants operate unpublish.com and unpublisharrest.com deliberately so as to deceive people into believing that they are independent reputation management firms.

82. Defendants operate unpublish.com and unpublisharrest.com deliberately with the intent that people rely on their representations and pay additional monies.

**How the Websites Obtain Visitors**

83. Visitors to the website arrive in one of two ways.

84. The first method is via a web engine search for the arrestee, such as through Google or Yahoo!.

85. The Defendants use analytics and search optimization to ensure that their results are the first, or near the top, for most or all arrestees.

86. In this method, a person searching a particular name will receive a link to mugshots.com among the top search results.

87. Clicking on the link will take the person to a web page containing the arrestee's complete arrest history, including photographs taken upon booking.

88. The web page will also contain a list of what purports to be legal definitions.

89. Generally, before being able to view the page, the person will also have to view or click out of a pop-up advertisement.

90. The second method is to visit the mugshots.com home page, then search their database for an arrestee.

91. Mugshots.com posts to its home page a list of photographs of various arrestees, often celebrities.

92. Defendants post the following on their contact page:

    Threats and other hostile communications: We reserve the right to publish any and all threats and all other communications submitted to us by you, your agent, or your attorney.

93. Defendants state on their website that people who state they cannot get a job as a result of their photograph being posted on mugshots.com "probably do not interview well."


**The Individual Defendants**

94. Upon information and belief, the LLC Defendants are alter egos for the individual Defendants with no independent assets, offices, or employees.

95. Only Unpublish LLC and Mugshots.com LLC are actual organized business entities. The Nevis Defendants and Openbare are not organized business entities and do not exist under the laws of any State or the island of Nevis.

96. The individual Defendants directly operate the subject matter websites in the State of Florida. None of the Defendants' offices are located in Nevis, and none of their business activities occur there.

97. The LLC Defendants do not observe corporate formalities. All Defendants share the same offices and comingle assets.

98. The Individual Defendants use Whois Nevis limited liability companies solely so as to create the appearance of separation between themselves and the LLC Defendants.

99. None of the LLC Defendants are registered or authorized to do business in the State of Illinois.

**The Plaintiff**

100. Plaintiff exited parole on July 27, 2012. When he did so, IDOC removed his records from their website.

101. When Plaintiff exited parole, mugshots.com posted a record for Plaintiff, with photograph, on its website.

102. Mugshots.com currently contains a web page for Plaintiff, which includes a photograph.

103. As of the date of this filing, that page states that Plaintiff is still on parole, and still contains a photograph.

104. On or about October 10, 2014, Plaintiff called the phone number provided for unpublisharrest.com on its website.

105. An operator at unpublisharrest.com informed Plaintiff that removing his image from the website would cost $2,000 to mugshots.com, plus an additional representation fee to unpublisharrest.com.

106. Plaintiff called unpublisharrest.com because he actually relied on its representation that it was an independent reputation management firm.

<u>**CLASS ACTION ALLEGATIONS**</u>

107. Plaintiff, brings this action on behalf of himself and three classes of similarly situated individuals, pursuant to Federal Rule of Civil Procedure 23.

108.     **CLASS A** consists of all persons in the State of Illinois whose images were posted to or available on mugshots.com from January 1, 2010 to the present.

109.     Plaintiffs seek certification of Class A under Rule 23(b)(3) and 23 (b)(2) as to Count I, and 23(c)(4) and 23 (b)(2) as to Count II.

110.     The members of Class A potentially number in the hundreds of thousands.

111.     Mugshots.com states on its website that it has posted records and photographs for 406,000 people in Illinois.

112.     Mugshots.com states on its website that it posts to its website all or most arrest records available on the IDOC website.

113.     Mugshots.com does not remove images when they are removed from the IDOC website.

114.     In 2012, 49,154 inmates were housed in Illinois correctional facilities.  In 2014, there were 17,645 arrests in Lake County alone.

115.     The members of Class A are therefore so numerous that joinder of all members is impracticable.

116.     **CLASS B** consists of all persons in the United States whose images were posted to or available on mugshots.com between January 1, 2010 and the present.

117.     The members of Class B number in the millions.

118.     Defendants have posted records and photographs for over 21,060,000 people in the United States.

119.     The members of Class B are therefore so numerous that joinder of all members is impracticable.

120.        Plaintiffs seek certification of Class B under Rule 23(b) as to Count III, and 23(c)(4) as to Count IV.

121.        The Plaintiff will fairly and adequately protect the interests of each class.

122.        The Plaintiffs' counsel is experienced in class action matters, and a class action is the most appropriate means for the fair and efficient adjudication of the claims herein.

123.        Defendants used the same forms and policies as to all class members.  Plaintiff has no unique defenses or interests adverse to those of the class.

124.        The identities of all members of each class can be easily determined from the records and subject matter websites of each Defendant herein.

125.        Plaintiff has signed a written attorney-client agreement with Berton N. Ring, P.C., and has expressly assigned all claims for attorney fees to Berton N. Ring, P.C.


**COUNT I**
**VIOLATIONS OF THE ILLINOIS RIGHT OF PUBLICITY ACT**
*On behalf of Class A*
*Against All Defendants*

126.        Plaintiff restates and re-alleges paragraphs 1-125 of this Class Action Complaint as if fully set forth herein.

127.        The people of the State of Illinois, by and through their popularly elected legislature, enacted a statute entitled the Illinois Right of Publicity Act, codified at 765 ILCS 1075/1 *et seq*. ("ROPA").  That statute was in force and effective at all times herein relevant.

128.        Defendants transacted business in the State of Illinois by soliciting and accepting payments made in this State, and in so doing availed themselves of Illinois law, including ROPA.

129.     Pursuant to the ROPA, "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity."  765 ILCS 1075/10.

130.     Pursuant to the ROPA, "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act [765 ILCS 1075/20] or their authorized representative."  765 ILCS 1075/30.

131.     Pursuant to the ROPA,

> "Commercial purpose" means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising.

> "Identity" means any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) *photograph*, (iv) *image*, (v) likeness, or (vi) voice.

765 ILCS 1075/5 (emphasis supplied).

132.     Defendants did not obtain written permission from the Plaintiff to post Plaintiff's photograph to the subject matter websites.

133.     Defendants did not obtain written permission from any person whose mugshot photograph appears on the subject matter websites.

134.     Defendants use the Plaintiff's photograph for commercial purposes through one or more of the following:

- Requiring payment in order to remove said photograph;
- Offering advertisers the opportunity to advertise on the website;
- Displaying the photographs in connection with the "service" of public record access;

- Offering permanent display of his photograph for a fee;
- Other acts specified herein.

135.     Defendants acted in the same or substantially similar ways towards all members of

Class A.

136.     Defendants' sole use for the photographs posted or available on the subject matter

websites is a commercial purpose.

137.     Defendants' actions were willful and intentional.

138.     Pursuant to the ROPA,

A person who violates Section 30 of this Act [765 ILCS 1075/30] may be liable for either of the following, whichever is greater:

(1) actual damages, profits derived from the unauthorized use, or both; or

(2) $ 1,000.

(b) Punitive damages may be awarded against a person found to have willfully violated Section 30 of this Act [765 ILCS 1075/30].

765 ILCS 1075/40.

139.     Pursuant to the ROPA, "the court may issue such temporary restraining orders,

preliminary injunctions, and permanent injunctions as may be appropriate under this Act."

765 ILCS 1075/50.

140.     Pursuant to the ROPA, "The court may award to the prevailing party reasonable

attorney's fees, costs, and expenses relating to an action under this Act."   765 ILCS

1075/55.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court grant and award the

following relief:

(a) Certify this cause as a class action pursuant to Rule 23(b)(3), and award each class member $1,000, plus punitive damages;

(b) Certify this cause as a class action pursuant to Rule 23(b)(2), and issue a permanent injunction against further violations of ROPA by Defendants as to any members of the Class, including any further posting or use of the images or photographs of Plaintiff and the members of the Class;

(c) Award to the Plaintiff and the Class punitive damages, costs of suit, and reasonable attorney fees; and

(d) Grant whatever additional relief this Court deems appropriate and just under the circumstances.

## COUNT II
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT
### *On behalf of Class A*
### *Against All Defendants*

141.    Plaintiff restates and re-alleges paragraphs 1-140 of this Class Action Complaint, inclusive of Count I, as if fully set forth herein.

142.    The people of the State of Illinois, by and through their popularly elected legislature, enacted a statute known as the Illinois Consumer Fraud and Deceptive Business Practices Act, codified at 815 ILCS 505/1 *et seq.* (the "ICFA").  The ICFA was in force and effective at all times herein relevant.

143.    Pursuant to the ICFA,

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade

Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45].

815 ILCS 505/2.

144.  Pursuant to the ICFA, both unfair and deceptive conduct is unlawful.

145.  Defendants violated the ICFA by one or more of the following deceptive acts:

(a) Operating two sister sites, unpublish.com and unpublisharrest.com, purportedly as separate entities, with the intention that people actually rely on that representation and pay additional monies;

(b) Representing that payment by an arrestee would result in removal of the arrestee's photograph, when in reality Defendants routinely failed to do so after payment;

(c) Other deceptive acts as alleged and set forth herein.

146.  Defendants violated ICFA by one or more of the following unfair acts or omissions:

(a) Operating two sister sites, unpublish.com and unpublisharrest.com, purportedly as separate entities, with the intention that people actually rely on that representation and pay additional monies;

(b) Representing that payment by an arrestee would result in removal of the arrestee's photograph, when in reality Defendants routinely failed to do so after payment;

(c) Deliberately failing to correct incorrect and/or inaccurate information solely so as to incentivize payment by arrestees;

(d) Using the likenesses of arrestees for commercial purposes without written consent, and refusing to remove those likenesses without payment;

(e) Other unfair acts as alleged and set forth herein.

147.  Pursuant to ICFA, "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the

court deems proper . . . [and] the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a

WHEREFORE, the Plaintiff respectfully requests this Honorable Court grant and award the following relief:

    (a) Certify this cause as a class action pursuant to Rule 23(c)(4), and enter judgment in favor of Plaintiff and the Class and against Defendants as to liability;

    (b) Certify this cause as a class action pursuant to Rule 23(b)(2), and issue a permanent injunction against further violations of ICFA by Defendants as to any members of the Class, including any further posting or use of the images or photographs of Plaintiff and the members of the Class;

    (c) Award to the Plaintiff and the Class costs of suit and reasonable attorney fees; and

    (d) Grant whatever additional relief this Court deems appropriate and just under the circumstances.

## COUNT III
## <u>VIOLATIONS OF THE FLORIDA RIGHT OF PUBLICITY ACT</u>
### *On behalf of Class B*
### *Against the Individual Defendants; Unpublish, LLC; and Mugshots.com, LLC*

148.      Plaintiff restates and re-alleges paragraphs 1-125 of this Class Action Complaint as if fully set forth herein.

149.      Upon information and belief, the Nevis Companies and Openbare do not exist as actual business entities, have no independent assets or operations, and exist solely as shells to shield the actual owners of the subject matter websites.

150.    Epstein and Richardson, and some or all of the other Defendants, live and work in Florida, including ownership and operation of the subject matter websites.

151.    Upon information and belief, Epstein and Richardson operate the subject matter websites in Florida, including solicitation and acceptance of all payments.

152.    Upon information and belief, one or more of the subject matter websites are hosted on servers located in Florida.

153.    On information and belief, callers to the subject matter websites reach a call center located in Florida.

154.    On information and belief, requests and "applications" for correction or removal of information are reviewed by Defendants in Florida.

155.    All transactions and operations of the Defendants are subject to Florida law.

156.    The people of the State of Florida, by and through their popularly elected legislature, enacted a statute entitled the Florida Right of Publicity Act, codified at Fla. Stat. § 540.08 ("FROPA"). FROPA was in force and effective at all times herein relevant.

157.    Pursuant to FROPA:

(1) No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:

(a) Such person; or

(b) Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness; or

(c) If such person is deceased, any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or

his surviving spouse and surviving children.

(2) In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness, or, if the person whose likeness is used is deceased, any person, firm, or corporation having the right to give such consent, as provided hereinabove, may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

(3) If a person uses the name, portrait, photograph, or other likeness of a member of the armed forces without obtaining the consent required in subsection (1) and such use is not subject to any exception listed in this section, a court may impose a civil penalty of up to $ 1,000 per violation in addition to the civil remedies contained in subsection (2). Each commercial transaction constitutes a violation under this section.

Fla. Stat. § 540.08.

158.    Defendants did not obtain written permission from the Plaintiff to post Plaintiff's photograph to the subject matter websites.

159.    Defendants did not obtain written permission from any person whose mugshot photograph appears on the subject matter websites.

160.    Defendants use the Plaintiff's photograph for commercial purposes through one or more of the following:

- Requiring payment in order to remove said photograph;
- Offering advertisers the opportunity to advertise on the website;
- Displaying the photographs in connection with the "service" of public record access;
- Offering permanent display of his photograph for a fee;
- Other acts specified herein.

161.    Defendants acted in the same or substantially similar ways towards all members of Class B.

162.     Defendants' sole use for the photographs posted or available on the subject matter websites is a commercial purpose.

163.     Defendants' actions were willful and intentional.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court grant and award the following relief:

(a) Certify this cause as a class action pursuant to Rule 23(b)(3), and award each class member $1,000, plus punitive damages;

(b) Certify this cause as a class action pursuant to Rule 23(b)(2), and issue a permanent injunction against further violations of ROPA by Defendants as to any members of the Class, including any further posting or use of the images or photographs of Plaintiff and the members of the Class;

(c) Award to the Plaintiff and the Class punitive damages, costs of suit, and reasonable attorney fees; and

(d) Grant whatever additional relief this Court deems appropriate and just under the circumstances.

## COUNT IV
## VIOLATIONS OF THE FLORIDA CONSUMER FRAUD ACT
### *On behalf of Class B*
### *Against the Individual Defendants; Unpublish, LLC; and Mugshots.com, LLC*

164.     Plaintiff restates and re-alleges paragraphs 1-163 of this Class Action Complaint, inclusive of all allegations in Count III, as if fully set forth herein.

165.     The people of the State of Florida, by and through their popularly elected legislature, enacted a statute entitled the Florida Consumer Protection Act, codified at Fla.

Stat. § 501.204 *et seq.* ("FCPA"). The FCPA was in force and effective at all times herein relevant.

166.     Pursuant to the FCPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204. .

167.     Pursuant to the FCPA,

> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.
>
> (2) In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in [FCPA].

Fla. Stat. § 501.211.

168.     Defendants violated the FCPA by one or more of the following deceptive acts:

> (d) Operating two sister sites, unpublish.com and unpublisharrest.com, purportedly as separate entities, with the intention that people actually rely on that representation and pay additional monies;
>
> (e) Representing that payment by an arrestee would result in removal of the arrestee's photograph, when in reality Defendants routinely failed to do so after payment;
>
> (f) Other deceptive acts as alleged and set forth herein.

169.     Defendants violated FCPA by one or more of the following unfair acts or omissions:

> (f) Operating two sister sites, unpublish.com and unpublisharrest.com, purportedly as separate entities, with the intention that people actually rely on that representation and pay additional monies;
>
> (g) Representing that payment by an arrestee would result in removal of the arrestee's photograph, when in reality Defendants routinely failed to do so after payment;

    (h) Deliberately failing to correct incorrect and/or inaccurate information solely so as to incentivize payment by arrestees;

    (i) Using the likenesses of arrestees for commercial purposes without written consent, and refusing to remove those likenesses without payment;

    (j) Other unfair acts as alleged and set forth herein.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court grant and award the following relief:

    (a) Certify this cause as a class action pursuant to Rule 23(c)(4), and enter judgment in favor of Plaintiff and the Class and against Defendants as to liability;

    (b) Certify this cause as a class action pursuant to Rule 23(b)(2), and issue a permanent injunction against further violations of FCPA by Defendants as to any members of the Class, including any further posting or use of the images or photographs of Plaintiff and the members of the Class;

    (c) Award to the Plaintiff and the Class costs of suit and reasonable attorney fees; and

    (d) Grant whatever additional relief this Court deems appropriate and just under the circumstances.

**ALL CLASS COUNTS HEREIN ARE REPLEADED AND RE-ALLEGED AND INDIVIDUAL CAUSES OF ACTION**

                          Respectfully submitted,
                          PETER GABIOLA, on behalf of himself and all others similarly situated,

                          /s/ Berton N. Ring
                          By the Plaintiff's Attorneys
                          Berton N. Ring, P.C.

Berton N. Ring #6183351
Stuart M. Clarke #6311043
BERTON N. RING, P.C.
123 West Madison Street, 15th Floor
Chicago, IL 60602
(312) 781-0290


## <u>NOTICE OF ATTORNEY LIEN</u>

Please take notice that the Plaintiffs have retained Berton N. Ring, P.C. on this matter. Berton N. Ring, P.C. shall have a claim and an interest under the Illinois Attorneys Lien Act 770 ILCS 5/1 and for attorney fees under all applicable statutes referenced herein, as well as 72 ILCS 5/12-7.1, all statutes previously mentioned here in the complaint, and all retaining liens and common law rights.


<u>/s/ Berton N. Ring</u>
Berton N. Ring