**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PETER GABIOLA, on behalf of himself and all other similarly situated individuals,<br><br><br>       Plaintiff,<br><br>vs.<br><br><br>MUGSHOTS.COM, LLC, a Delaware Limited Liability Company; JOKULSA LAEKUR LLC d/b/a "Mugshots.com"; JULKISUUDESSA, LLC; OPENBARE DIENST INTERNATIONALE, LLC; UNPUBLISH, LLC, an Australia Limited Liability Company; UNPUBLISH, LLC, a Florida Limited Liability Company; UNPUBLISH, LLC, a Wyoming Limited Liability Company; HAMMERMILL & MASTERSON LLC d/b/a Unpublisharrest.com, a Wyoming Limited Liability Company; HAMMERMILL & MASTERSON LLC d/b/a Unpublisharrest.com, a Florida Limited Liability Company; WILLIAM FOWLER; THOMAS KEESEE; MARC GARY EPSTEIN; GARY DECKER; AXEL OSTLUND; CHARLES WINSLOW; MICHAEL ROBERTSON a/k/a MICHAEL J. ROBERTSON; ARI EPSTEIN; and UNPUBLISHING SERVICES, LLC, a Wyoming Limited Liability Company,<br><br><br>       Defendants. | No. 14-cv-9351<br><br><br><br>Honorable Judge<br><br>Charles Norgle |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF**
**DEFENDANTS THOMAS KEESEE, MARK EPSTEIN,**
**AND HAMMERMILL & MASTERSON LLC**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.    THE COURT LACKS PERSONAL JURISDICTION OVER EPSTEIN AND KEESEE.................................................................................................................. 3

II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION, BECAUSE THE AMENDED COMPLAINT FAILS TO SUFFICIENTLY ALLEGE INJURY IN FACT. ....................................................................................................................... 7

III.   THE COURT ALSO LACKS SUBJECT MATTER JURISDICTION BECAUSE THE AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332............................................ 11

    A.    The Amended Complaint Fails to Allege Both the Existence of Complete Diversity and the Jurisdictional Amount Required By 28 U.S.C. § 1332(a)....... 11

    B.    The Amended Complaint Fails To Establish the Jurisdictional Amount Required for Jurisdiction Under 28 U.S.C. § 1332(d). ........................................ 12

IV.   THE AMENDED COMPLAINT, IN ANY CASE, FAILS TO STATE ANY CLAIMS FOR WHICH RELIEF CAN BE GRANTED AGAINST MOVING DEFENDANTS. ...................................................................................................... 15

    A.    The Salient Facts Alleged in the Amended Complaint........................................ 15

    B.    The Standard for Rule 12(b)(6) Dismissal........................................................... 17

    C.    The Entire Amended Complaint Must Be Dismissed for Improper "Group" or "Block" Pleading. ................................................................................ 17

    D.    The Court Should Dismiss Count I Because Plaintiff's Claim for Violation of the Illinois Right of Publicity Act ("IRPA") is Both Time Barred and Not Plausible. ...................................................................................................... 18

        1.    The IRPA Claim is Barred by the One-Year Statute of Limitations ....... 18

        2.    The IRPA Claim Also Fails Because the Arrest Information is Not Used to Endorse any Product or Service.................................................... 19

        3.    The Publication of Arrest Information on Mugshots.com is for a Non-Commercial Purpose, as Defined by the IRPA .............................. 20

    E.    The Court Should Dismiss Count IV Because Plaintiff's Claim for Violation of the Florida Right of Publicity Act ("FRPA") is Not Plausible........ 22

1.      Plaintiff's FRPA Claim should be Dismissed Because Plaintiff has not Alleged that he has been Personally Damaged by the Alleged Violation ................................................................................................ 22

2.      Mugshots.com Does Not Use Arrest Photos to Directly Promote a Product or Service .................................................................................. 23

F.      The Consumer Fraud Claims, in Any Event, Should be Dismissed for Lack of Standing and Failure to Plead with Particularity. ................................... 24

1.      Plaintiff does not have Standing to Assert Claims Under Either the Illinois or Florida Consumer Fraud Statutes, because the Complaint Fails to Allege Facts to Show Actual Damages Caused by the Alleged Violations of the ICFA and the FCPA .......................... 24

2.      Plaintiff's Consumer Fraud Claims should be Dismissed for Failure to Plead Fraud with Particularity .................................................. 25

CONCLUSION .................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re African-Am. Slave Descendants Litig.*,
304 F. Supp.2d 1027 (N.D. Ill. 2004) ...............................................................................7, 10

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006) .....................................................................................23

*Am. Bottom Conservancy v. U.S. Army Corps of Engineers*,
650 F.3d 652 (7th Cir. 2011) ...........................................................................................9

*Amerigas Propane, L.P. v. BP America, Inc.*,
691 F. Supp. 2d 844 (N.D. Ill. 2010) .......................................................................24, 26

*Ariz. Christian Sch. Tuition Org. v. Winn*,
131 S. Ct. 1436 (2011) ..................................................................................................8, 9

*Arnold v. Goldstar Fin. Sys., Inc.*,
No. 01 C 7694, 2002 WL 1941546 (N.D. Ill. Aug. 22, 2002) .................................6

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937 (2009) .......................................................................17, 25

*Bank One, Okla., N.A. v. Trammell Crow Servs., Inc.*,
2003 WL 23019173 (N.D. Ill. Dec. 23, 2003) .....................................................17

*Beaman v. Souk*,
2011 WL 832506 (C.D. Ill. Mar. 3, 2011) ............................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955 (2007) .......................................................................17, 25

*Belleville Catering Co. v. Champaign Market Place, LLC*,
350 F.3d 691 (7th Cir. 2003) .........................................................................................12

*Berry v. Ford Modeling Agency*,
2010 WL 1930154 (N.D. Ill. May 13, 2010) .........................................................19

*Best v. Berard*,
776 F.Supp.2d 752 (N.D. Ill. 2011) .......................................................................20, 21

*Blair v. Nevada Landing P'ship.*,
859 N.E.2d 1188 (Ill. App. Ct. 2006) .....................................................................19, 20

i

*Brinker Capital Holdings, Inc. v. Imagex Servs.*,
    178 F.R.D. 380 (N.D.N.Y. 1998)........................................................26

*Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*,
    536 F.3d 757 (7th Cir. 2008) ...........................................................3

*CM Corp. v. Oberer Dev. Co.*,
    631 F.2d 536 (7th Cir. 1980) ...........................................................7

*Cohen v. Facebook, Inc.*,
    No. C 10-5282 RS, 2011 WL 5117164 (N.D. Cal. Oct. 27, 2011).........................11

*Commonwealth Ins. Co. v. Titan Tire Corp.*,
    398 F.3d 879 (7th Cir. 2004) ...........................................................12

*Cox Broadcasting Corp. v. Cohn*,
    420 U.S. 469 (1975).................................................................2, 14

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)...................................................................7

*Daniel J. Hartwig Assoc., Inc. v. Kanner*,
    913 F.2d 1213 (7th Cir. 1990) ..........................................................3

*Design Time, Inc. v. Synthetic Diamond Tech., Inc.*,
    674 F. Supp. 1564 (N.D. Ind. 1987) ....................................................18

*Detroit Free Press, Inc. v. Oakland County Sheriff*,
    164 Mich.App. 656, 418 N.W.2d 124 (1988).............................................21

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ..........................................................25

*Egan v. Huntington Copper, LLC*,
    *No*. 12 C 9034, 2014 WL 585316 (N.D. Ill. Feb. 14, 2014)...............................5

*Escobedo v. Ram Shirdi Inc.*,
    No. 10-CV-6598, 2014 WL 4553186 (N.D. Ill. Sept. 15, 2014).............................6

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
    756 F.Supp.2d 1352 (N.D. Fla. 2010)...................................................23

*Friends of Earth, Inc. v. Laidlow Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)...................................................................8

*United States ex rel. Garst v. Lockheed-Martin Corp.*,
    328 F.3d 374 (7th Cir. 2003) .........................................................26

*Glass v. Kemper Corp.*,
930 F. Supp. 332 (N.D. Ill. 1996) ....................................................3

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993) .......................................................2

*Indemnified Capital Invs., S.A. v. R.J. O'Brien & Assocs., Inc.*,
12 F.3d 1406 (7th Cir. 1993) ......................................................9

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) .....................................................24

*Lakeview Tech., Inc. v. Vision Solutions, Inc.*,
No. 05 C 7209, 2007 WL 79246 (N.D. Ill. Jan. 9, 2007) .......................6

*Lane v. MRA Holdings, LLC*,
242 F. Supp. 2d 1205 (M.D. Fla. 2002)........................................23

*Loft v. Fuller*,
408 So.2d 619 (Fla. 4th DCA 1981) ...........................................23

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...................................................................8

*People ex rel. Madigan v. United Const. of Am.*,
981 N.E.2d 404 (1st Dist. 2012) ................................................24

*Maremont v. Susan Fredman Design Group, Ltd.*,
772 F. Supp. 2d 967 (N.D. Ill. 2011) ..........................................19

*Michigan v. United States Environmental Protection Agency*,
581 F.3d 524 (7th Cir. 2009) ......................................................8

*Midwest Grinding Co. v. Spitz*,
976 F.2d 1016 (7th Cir. 1992) ...................................................26

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)......................................................26

*" New York Times Co. v. Sullivan*,
376 U.S. 254, 84 S. Ct. 710 (1964)............................................22

*Oliveira v. Amoco Oil Co.*,
201 Ill. 2d 134, 776 N.E.2d 151 (2002) ......................................24

*Penwell v. Taft Broad. Co.*,
13 Ohio App.3d 382, 469 N.E.2d 1025 (1984)..............................21

*Pirelli Armstrong Tire Corp. v. Titan Tire Corp.*,
    4 F. Supp. 2d 794 (C.D. Ill. 1998) ("Illinois courts are reluctant to pierce the
    corporate veil") ......................................................................................................7

*Pollack v. United States Department of Justice*,
    577 F.3d 736 (7th Cir. 2009) ...................................................................................8

*RAR, Inc. v. Turner Diesel, Ltd.*,
    107 F.3d 1272 (7th Cir. 1997) .................................................................................3

*Rollins v. Ellwood*,
    141 Ill.2d 244, 565 N.E.2d 1302 (1990) .................................................................6

*Smith v. 2001 S. Dixie Highway, Inc.*,
    872 So. 2d 992 (Fla. Dist. Ct. App. 2004) .............................................................25

*Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*,
    585 F. Supp. 2d 815 (E.D. Va. 2008) ......................................................................9

*Stockwire Research Group, Inc. v. Lebed*,
    577 F.Supp.2d 1262 (S.D. Fla. 2008) ....................................................................22

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871, 882 (N.D. Ill. 2014) ..............................................................11

*Suburban Buick, Inc. v. Gargo*,
    2009 WL 1543709 (N.D. Ill. May 29, 2009) .........................................................18

*Summers v. Earth Island Inst.*,
    555 U.S. 488, 129 S. Ct. 1142 (2009).......................................................................8

*Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*,
    571 F. Supp. 2d 882 (N.D. Ill. 2008) .......................................................................7

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ...............................................................................3, 4

*Thompson's Gas & Elec. Serv., Inc. v. BP America Inc.*,
    691 F. Supp. 2d 860 (N.D. Ill. 2010) ....................................................................24

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) ...........................................................................19, 20

*Tyne v. Time Warner Entm't Co., L.P.*,
    901 So.2d 802 (Fla. 2005).......................................................................................23

*Valentine v. CBS, Inc.*,
    698 F.2d 430 (11th Cir. 1983) ...............................................................................23

*Van Dorn Co. v. Future Chem. & Oil Corp.*,
  753 F.2d 565 (7th Cir. 1985) ..................................................................7

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
  20 F.3d 771 (7th Cir. 1994) ..............................................................17, 25

*Watt v. City of Highland Park*,
  2001 WL 1090152 (N.D. Ill. Sept. 13, 2001) ......................................18

*Wells v. Talk Radio Network-FM, Inc.*,
  2008 WL 4888992 (N.D. Ill. Aug. 7, 2008) ........................................19

*Williams v. KCMO Broad. Division-Meredith Corp.*,
  472 S.W.2d 1 (1971) ............................................................................21

*Young v. Colgate-Palmolive Co.*,
  790 F.2d 567 (7th Cir. 1986) ................................................................5

*Zekman v. Direct Am. Marketers, Inc.*,
  182 Ill. 2d 359, 695 N.E.2d 853 (1998) ..............................................24

**Statutes**

765 ILCS 1075/5 ........................................................................................20

765 ILCS 1075/35(b)(2) ............................................................................20

805 ILCS 180/10-10(c) ................................................................................7

815 ILCS 505/10a ................................................................................24, 25

28 U.S.C. § 1332 ..............................................................................11, 26

28 U.S.C. § 1332(a) ..........................................................................11, 12

28 U.S.C. § 1332(d) ..........................................................2, 11, 12, 13

28 U.S.C. § 1332(d)(1)(D) ......................................................................12

28 U.S.C. § 1332(d)(2) ............................................................................12

CAFA ........................................................................................................12

Class Action Fairness Act ......................................................................15

Section 1332(d), part of the Class Action Fairness Act ........................12

Consumer Fraud Act ..............................................................................24

FCPA ................................................................................................24, 25

Fla. Stat. § 540.08(3) ........................................................................................................22

Florida Consumer Fraud Act ......................................................................................1, 16

Florida Statute §540.08 ..........................................................................................22, 23

Freedom of Information Act ..............................................................................................15

FRPA ...............................................................................................................................22, 24

Illinois Consumer Fraud Act ........................................................................................1, 16

Illinois Limited Liability Act ...........................................................................................7

Illinois Right to Publicity Act ........................................................................................19

IRPA ...........................................................................................................18, 19, 20, 22

Publicity Act .........................................................................................................1, 16, 18

Publicity Act .........................................................................................................1, 16, 22

Publicity Act ......................................................................................................................19

## Other Authorities

5 Wright & Miller, *Federal Practice and Procedure* § 1298, at 648 (1969) ..............................26

14AA Wright, Miller & Cooper, *Federal Practice and Procedure* § 3702.5 at 494
    (2011) ...............................................................................................................................13

First Amendment ........................................................................................... *passim*

Fed. R. Civ. P. 8(a) ...........................................................................................................17

Rule 9(b) of the Federal Rules of Civil Procedure ....................................................25

Rule 12(b)(1) of the Federal Rules of Civil Procedure .................................................8

Proposed "Class A" ..........................................................................................................13

*Restatement (Second) of Torts*, § 652D cmt. ...........................................................21

Rule 8 ..................................................................................................................................17

Rule 9(b) ..............................................................................................................25, 26, 27

Rule 9(b)'s ..........................................................................................................................26

Rule 12(b)(1) ......................................................................................................................12

Rule 12(b)(6)..............................................................................................................17

Article III of the United States Constitution .......................................................... *passim*

# INTRODUCTION

Defendants THOMAS KEESEE ("Keesee"), MARC GARY EPSTEIN ("Epstein") and HAMMERMILL & MASTERSON LLC, a Wyoming Limited Liability Company ("Hammermill"), collectively the "Moving Defendants," respectfully submit this memorandum in support of their separately filed motion to dismiss the First Amended Class Action Complaint at Law and Equity (Doc. 23) (the "Amended Complaint") with prejudice for lack of subject matter jurisdiction, failure to state claims for which relief may be granted and -- as to Defendants Thomas Keesee and Marc Gary Epstein -- lack of personal jurisdiction.

On May 22, 2015, Plaintiff Peter Gabiola filed his Amended Complaint, which alleges five separate claims for relief under state law[1] against 10 limited liability companies and 8 individuals.  In addition to himself, Mr. Gabiola seeks to represent multiple classes of individuals who are alleged to be "similarly situated" to Mr. Gabiola.  Amended Complaint, ¶ 216.  The Amended Complaint makes no pretense in its 283 paragraphs and 40 pages of even attempting to allege what any Moving Defendant did.  Instead, it resorts to inscrutable (and improper) "block pleading" allegations about what unspecified "Defendants" supposedly did.  *See* Section IV(C), *infra*.  In this respect, it fails to provide Moving Defendants with meaningful notice of the claims against them.

---

[1] Those claims are for alleged violations of the Illinois Right of Publicity Act ("IRPA") (Count 1), the Illinois Consumer Fraud Act ("IFCA") (Counts II and III), the Florida Right of Publicity Act ("FRPA") (Count IV), and the Florida Consumer Fraud Act ("FCPA") (Count V).  No federal claims are alleged.

At the core of the five claims is the alleged posting of Mr. Gabiola's mugshot on a public information website where public information about his arrest, conviction and incarceration could be readily accessed by the general public. *See* Section IV(A), *infra*. No separate harm to Mr. Gabiola is alleged. Consistent with this focus upon the republication of information and images disclosed to the public by state and local governmental units, the proposed classes are also defined solely in terms of persons "whose images were posted to or available on mugshots.com from January 1, 2010 to the present." Amended Complaint, ¶¶ 217 and 223.

Images, information and data about arrests, bookings, convictions, sentencings, fines and incarceration are, of course, public records, available to anyone upon request. In many cases such information is published on the Internet by an arresting entity. In any case, publication and republication of arrest and booking information has long been recognized as being activity that is protected by the First Amendment. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975) (when "true information is disclosed in public... documents open to public inspection, the press cannot be sanctioned for publishing it."). For over 40 years *Cox Broadcasting* has represented the bedrock First Amendment principle that there is an unfettered "privilege to publish matters contained in public records." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1231-32 (7th Cir. 1993). From this it follows that posting, or making available on the Internet, such images and information cannot be the basis of any alleged injury, cannot be a violation of any state statute, and cannot be a basis for this court proceeding further with this case. This fundamental constitutional principle becomes important in evaluating Article III standing requirements that are central to this Court's jurisdiction, in computing the aggregated amount in controversy for diversity jurisdiction under 28 U.S.C. § 1332(d), and in deciding whether Mr.

Gabiola has alleged facts that could support his purported claims under the Illinois and Florida statutes referenced in the Amended Complaint.

Before turning to those issues, however, we first address the absence of any basis upon which this Court could have *in personam* jurisdiction in this case over either Thomas Keesee or Marc Gary Epstein. Both are alleged to be citizens of Florida; neither is alleged to do business in Illinois or have contacts with Illinois from which Mr. Gabiola's claims supposedly arise.

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER EPSTEIN AND KEESEE.

Certain principles are fundamental and well-settled. Mr. Gabiola bears the burden of establishing personal jurisdiction over each defendant, and the Amended Complaint must allege facts sufficient to establish jurisdiction. *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). A court can only consider the allegations pled, not what the plaintiff intends on proving through discovery. *See Glass v. Kemper Corp.*, 930 F. Supp. 332 (N.D. Ill. 1996). Where, as here, subject matter jurisdiction is purportedly based upon diversity of citizenship, a federal court sitting in Illinois has personal jurisdiction over a non-resident defendant only if an Illinois court would have jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990).

As a threshold matter, there can be no serious suggestion that this Court has general *in personam* jurisdiction over either Mr. Keesee or Mr. Epstein. That would require the allegation and proof of "continuous and systematic" contacts with Illinois that are "sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th

3

Cir. 2010). Neither Mr. Keesee nor Mr. Epstein have contacts with Illinois of that nature, and the Amended Complaint does not allege otherwise.

There is also no basis for special (or claim specific) *in personam* jurisdiction over Messrs. Keesee and Epstein with respect to the subject matter of the Amended Complaint. The exercise of such jurisdiction over a non-resident individual requires specific allegation and proof, separately as to each individual, that: 1) the individual has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state and 2) the alleged injury arises out of his forum-related activities. *Id*. at 702. Nothing in the allegations of the Amended Complaint suggest that either Mr. Keesee or Mr. Epstein -- in contrast to other "defendants" and in contrast to the limited liability entities that are alleged to have operated Mugshots.com -- purposefully directed activities at Illinois or conducted business there at all. Nothing in the Amended Complaint alleges that any action by either Mr. Keesee or Mr. Epstein caused any cognizable injury to Mr. Gabiola.

Mr. Keesee is a resident and citizen of Florida (Amended Complaint ¶ 41), and is alleged to have been the "sole member and/or manager" of Hammermill (*id.*, ¶ 40).[2] The Amended Complaint does not allege acts by Mr. Keesee in, relating to, or directed at Illinois. In fact, as noted, there are no allegations of any acts by Mr. Keesee at all -- only conveniently vague assertions about actions supposedly taken by one or more unidentified "defendants" without any indication that Mr. Keesee was the alleged actor. There is certainly no allegation of any act by Mr. Keesee that caused Mr. Gabiola, or anyone else, any injury.

_____

[2] The Amended Complaint fails to explain which entity named "Hammermill & Masterson, LLC" is allegedly related to Mr. Keesee. But, regardless of how that allegation is interpreted, it at most asserts that Mr. Keesee has an ownership interest in, or is employed by, one of the LLC defendants.

Mr. Epstein is a resident of Florida, *id.*, ¶ 33, alleged to have been the "sole member and/or manager" for "each Unpublish LLC" and "an owner of one or more LLC defendants." *Id.*, ¶¶ 34 and 36. There is no allegation of actions by Mr. Epstein that were purposefully directed at Illinois or that caused injury to the Mr. Gabiola. Rather, Mr. Epstein is accused of having represented himself to be an attorney "for the subject matter websites" by "writing cease and desist letters and appearing in court proceedings on behalf of the websites." *Id.*, ¶ 35. But there is no suggestion that any such alleged representation occurred in Illinois, was directed at Illinois, or was in any respect unlawful. Beyond that, there are no allegations that Mr. Epstein's alleged activities as an attorney, or otherwise, caused Mr. Gabiola injury or, for that matter, injured anyone in Illinois.

The suggestion in the Amended Complaint that personal jurisdiction can be asserted over either Mr. Keesee or Mr. Epstein simply because they are alleged to be owners or employees of one or more limited liability entities that are alleged to own websites that posted information about Mr. Gabiola is simply not correct. Jurisdiction over a company (assuming *arguendo* that such jurisdiction exists) does not translate into jurisdiction over its officers, employees, or owners. *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 570 (7th Cir. 1986) (citation omitted). "[D]efendants cannot be haled into court in Illinois on the basis of acts committed here solely as fiduciaries of their corporation." *Id.* (quotation omitted). "[A] business's contacts cannot be attributed to individual officers or directors for purposes of determining whether personal jurisdiction lies over the individuals." *Egan v. Huntington Copper, LLC, No.* 12 C 9034, 2014 WL 585316, at *2 (N.D. Ill. Feb. 14, 2014). Assuming *arguendo* that either Mr. Keesee or Mr. Epstein is an employee or owner of an LLC alleged to operate Mugshots.com, such a fact would be insufficient as a matter of law to establish *in personam* jurisdiction.

5

Under Illinois' "fiduciary shield doctrine," where an individual defendant's conduct in Illinois is "a product of, and was motivated by, his employment situation and not his personal interests … it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Rollins v. Ellwood*, 141 Ill.2d 244, 280, 565 N.E.2d 1302, 1318 (1990). "The 'fiduciary shield' is an equitable, discretionary doctrine which 'protects a non-resident from being haled into court in Illinois in his individual capacity when that person's only contact with Illinois is 'by virtue of his acts as a fiduciary of a corporation.'" *Lakeview Tech., Inc. v. Vision Solutions, Inc.*, No. 05 C 7209, 2007 WL 79246, at *5 (N.D. Ill. Jan. 9, 2007) (quoting *Plastic Film Corp. of America, Inc. v. Unipac, Inc.*, 128 F.Supp.2d 1143, 1147 (N.D. Ill. 2001)). The doctrine applies equally to an agent principal relationship or to an employee-employer relationship. *Arnold v. Goldstar Fin. Sys., Inc*., No. 01 C 7694, 2002 WL 1941546, at *2 (N.D. Ill. Aug. 22, 2002) (holding that personal jurisdiction was lacking over attorney for credit repair business in suit alleging that the business engaged in fraudulent practices).

The bare allegations that: (1) one or more of "the LLC Defendants are alter egos for the individual Defendants with no independent assets, offices, or employees"; 2) "[t]he LLC Defendants do not observe corporate formalities"; 3) "[a]ll Defendants share the same offices and comingle assets"; and 4) "the Individual Defendants use Whois IP masking and purported Nevis limited liability companies solely so as to create the appearance of separation between themselves and the LLC Defendants," *see* Amended Complaint, ¶¶ 81, 84, 85, do not alter this conclusion for at least two independent and sufficient reasons. First, such statements are mere legal conclusions unsupported by specific facts on which those conclusions could plausibly be based and are insufficient as a matter of law under the standards of *Twombly/Iqbal*. *See Escobedo v. Ram Shirdi Inc.*, No. 10-CV-6598, 2014 WL 4553186, at *4 (N.D. Ill. Sept. 15,

2014) ("conclusory [veil piercing] allegations [that] merely recite the formulaic elements of the cause of action are not sufficient to state a claim."); *Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F. Supp. 2d 882, 885-86 (N.D. Ill. 2008) (dismissing alter ego claims for failure to allege plausible facts tending to show corporate entities were alter egos).[3]  Second, as noted, a corporation or LLC's contacts with the forum state are not attributable to its owners and employees.

From every plausible perspective, this Court lacks *in personam* jurisdiction over Mr. Keesee and lacks *in personam* jurisdiction over Mr. Epstein.  As to each, the Amended Complaint and this case should be dismissed in its entirety.

## II.  THIS COURT LACKS SUBJECT MATTER JURISDICTION, BECAUSE THE AMENDED COMPLAINT FAILS TO SUFFICIENTLY ALLEGE INJURY IN FACT.

Article III of the United States Constitution requires that "a plaintiff must demonstrate standing for each claim he seeks to press; . . . and 'for each form of relief' that is sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of Earth, Inc. v. Laidlow Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)); *In re African-Am. Slave Descendants Litig.*, 304 F. Supp.2d 1027, 1050 (N.D. Ill. 2004) ("The plaintiffs must establish

---

[3] Plaintiff could not, in any case, pierce the limited liability company veil.  Importantly, the Illinois Limited Liability Act does not require limited liability companies to follow corporate formalities.  805 ILCS 180/10-10(c) ("The failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business is not a ground for imposing personal liability on the members or managers for liabilities of the company."). Further, it is a well-settled principle that a limited liability company is an autonomous entity "separate and distinct from its shareholders, directors and officers…." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985).  This autonomy shields parties from the liabilities of a corporation and, thus, the court's power to pierce the corporate veil "should be exercised reluctantly and cautiously."  *CM Corp. v. Oberer Dev. Co.*, 631 F.2d 536, 541 (7th Cir. 1980); *see also Pirelli Armstrong Tire Corp. v. Titan Tire Corp.*, 4 F. Supp. 2d 794 (C.D. Ill. 1998) ("Illinois courts are reluctant to pierce the corporate veil").

the district court's jurisdiction over each of their claims independently; they are not permitted to use one count of their complaint to establish federal subject matter jurisdiction and a separate count to establish standing.") (quoting *Rifkin v. Bear Stearns & Co.*, 248 F.3d 628, 634 (7th Cir. 2001)).  If a plaintiff lacks standing, the court lacks subject matter jurisdiction and must dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See*, *e.g.*, *Pollack v. United States Department of Justice*, 577 F.3d 736, 743 (7th Cir. 2009); *Michigan v. United States Environmental Protection Agency*, 581 F.3d 524, 531 (7th Cir. 2009).

The Amended Complaint does not allege the constitutional minimum required for Article III jurisdiction.  To establish standing (and, thus, the jurisdiction of this Court over this case), Article III requires Mr. Gabiola to demonstrate that he:

> (1) *** has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167, 180-81 (2000).

This three part requirement -- injury, causality and redressability -- constitutes the "irreducible constitutional minimum" for standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) -- the "hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497, 129 S. Ct. 1142, 1151 (2009).  Thus, at a minimum, Mr. Gabiola must establish that he in fact suffered an actual, concrete injury to a **legally protected interest** that is fairly traceable to the challenged action and that is an injury **of a type that likely can be redressed** by a decision favorable to him.  *Lujan*, 504 U.S. at 561.

An "injury-in-fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Ariz. Christian*

*Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011) (quoting *Lujan*, 504 U.S. at 560-61); *see also Indemnified Capital Invs., S.A. v. R.J. O'Brien & Assocs., Inc.*,12 F.3d 1406, 1408-09 (7th Cir. 1993). The injury must be one that "affect[s] the plaintiff in a personal and individual way." *Winn*, 131 S. Ct. at 1442 (quoting *Lujan*, 504 U.S. at 560 n.1). Moreover, to be "actual or imminent," as opposed to "conjectural or hypothetical," there must be "some nonnegligible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress." *Am. Bottom Conservancy v. U.S. Army Corps of Engineers*, 650 F.3d 652, 658 (7th Cir. 2011). The purpose of the standing requirement is "to ensure that the legal remedies of primary victims of wrongful conduct will not be usurped by persons trivially or not at all harmed by the wrong complained of." *Id.*, at 656. Here, the Amended Complaint does not allege any cognizable injury to Mr. Gabiola that would support Article III standing.

To the extent Plaintiff objects to the posting of mugshots and information about arrests, or convictions or incarcerations or that his reputation (or anything else) was damaged by the publication of his booking photo, such publication does not involve an injury to any legally protected interest and cannot be redressed by the Court in light of First Amendment considerations. The booking photo constitutes a truthful matter of public concern. The First Amendment bars recovery for reputational injury damages arising out of the simple publication of truthful matters on an issue of public concern. *See e.g, Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 585 F. Supp. 2d 815, 820-21 (E.D. Va. 2008) ("if the damages sought are for injury to reputation caused by some sort of publication, the plaintiff must prove, by clear and convincing evidence, ***falsity of the statement*** and actual malice in the publication of it, even if the claim is not for defamation.") (emphasis added).

The Amended Complaint does not allege anything that shows that any legally protected interest of Mr. Plaintiff could have been damaged or injured.  It does allege that Mr. Gabiola "called the phone number provided for unpublishedarrest.com on its website" and was told what the cost for removal of his booking photo would be.  Amended Complaint, ¶¶ 213-214.  No injury there, and there is no allegation that he paid any money or that he paid money but his booking photo was not removed. Nowhere in his 40 page Amended Complaint does Mr. Gabiola ever allege such facts of injury.  Moreover, Counts II, III, and V of the Amended Complaint, based on the Illinois and Florida consumer fraud statutes, do not allege that Plaintiff has suffered actual damages (as those statutes required.)  *See* Sections IV (D) and (E), *infra*.

As to Counts I and IV, which assert claims under the Illinois and Florida right of publicity statutes, Plaintiff seeks only state law statutory damages and civil penalties respectively, without any proof or allegation of actual harm (*i.e.*, no injury in fact).  Without an allegation of injury in fact, claiming a right to statutory damages (or a civil penalty) under a state statute does not satisfy Article III standing requirements.

> The fact that a state statute dispenses with the requirement that an injury be alleged does not, and cannot, abrogate constitutional limitations imposed by Article III that a personal injury-in-fact is a prerequisite for standing to sue in a federal court. *See*, *e.g.*, *Burford v. Sun Oil Co*., 319 U.S. 315, 317, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (holding that state legislatures may not expand the jurisdiction of the federal district courts); *see also Rifkin v. Bear Stearns & Co., Inc*., 248 F.3d 628, 631 (7th Cir.2001) (same).

*In re African-Am. Slave Descendants Litig.*, 304 F. Supp. 2d 1027, 1050 (N.D. Ill. 2004).

At best, Plaintiff's allegations are that unspecified defendants violated one or more state statutes.  But "an allegation that a defendant violated a statute is not sufficient to confer standing; the plaintiff must also allege that she has been injured by the violation to establish standing."

*Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 882 (N.D. Ill. 2014) (citing *FMC Corp. v. Boesky*, 852 F.2d 981, 998 (7th Cir. 1988). The Amended Complaint fails to do so and must, therefore, be dismissed for lack of subject matter jurisdiction. *See Cohen v. Facebook, Inc.*, No. C 10-5282 RS, 2011 WL 5117164 (N.D. Cal. Oct. 27, 2011) (dismissing with prejudice plaintiffs' statutory right of publicity claims for failing to allege injury sufficient to support standing).

III. **THE COURT ALSO LACKS SUBJECT MATTER JURISDICTION BECAUSE THE AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332.**

The Amended Complaint asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332(d), Amended Complaint ¶¶ 1-10, and suggests that it has jurisdiction under 28 U.S.C. § 1332(a). *Id.*, ¶ 11. Neither statute provides a basis for diversity jurisdiction.

A. **The Amended Complaint Fails to Allege Both the Existence of Complete Diversity and the Jurisdictional Amount Required By 28 U.S.C. § 1332(a).**

In Amended Complaint ¶ 11, Plaintiff suggests that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) by alleging that "[a]lternatively, complete diversity exists between the Plaintiff and all Defendants, as set forth below." The Amended Complaint makes no attempt to allege an amount in controversy on Mr. Gabiola's claims in excess of $75,000.00 and thus fails to allege jurisdiction under 28 U.S.C. § 1332(a).

Beyond that, the Amended Complaint fails to allege complete diversity as required for 28 U.S.C. § 1332(a) jurisdiction. Defendants are comprised of ten limited liability companies and seven individuals. Plaintiff does not identify any of the members of the LLCs, or their states

of residence.[4]  The Seventh Circuit has made clear that where a limited liability company is a party and jurisdiction is based upon diversity of citizenship, the limited liability company is deemed to be an "unincorporated enterprise" which, for jurisdictional purposes, is a citizen of every state of which any member is a citizen.  *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 881 n.1 (7th Cir. 2004); *Belleville Catering Co. v. Champaign Market Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003).  The failure to identify the citizenship of all members of each limited liability company renders it impossible to determine whether there is complete diversity between the Plaintiff and all members of the limited liability companies.  Thus, the Amended Complaint does not adequately plead subject matter jurisdiction based on 28 U.S.C. § 1332(a) that requires dismissal pursuant to Rule 12(b)(1).

**B.**    **The Amended Complaint Fails To Establish the Jurisdictional Amount Required for Jurisdiction Under 28 U.S.C. § 1332(d).**

The Amended Complaint also asserts that this Court has original subject matter jurisdiction over this case by virtue of 28 U.S.C. § 1332(d).  Amended Complaint, ¶¶ 1-10.  Section 1332(d), part of the Class Action Fairness Act ("CAFA"), requires only minimal diversity for original jurisdiction over a class action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  Under the CAFA, the claims of individual class members[5] are to be aggregated to determine whether the matter in controversy exceeds $5,000,000.  *Id.*, § 1332(d)(6).

---

[4] Plaintiff does allege that Defendant "Epstein was an owner of one or more of the LLC Defendants," Amended Complaint, ¶ 36, and that Defendant "Robertson was an owner and/or primary operator of each and every LLC defendant[.]"  *Id.*, ¶ 48.

[5] The term "class members" means those persons who fall with the definition of the proposed class in a class action.  28 U.S.C. § 1332(d)(1)(D).

The Amended Complaint in paragraphs 4-9 purports to show that the matter in controversy exceeds $5,000,000. Amended Complaint, ¶¶ 4-9. What those allegations actually show is something quite different -- that neither the numbers alleged nor the manner of computation has any legal or factual nexus to any claim for which recovery could constitutionally be granted. In this respect, the proffered jurisdictional amounts are unsupportable, and the allegations of the Amended Complaint establish that the amount in controversy requirement has not been met.

The value of the amount in controversy for purposes of Section 1332(d) is the "direct pecuniary value of the right that the plaintiff seeks to enforce or protect." 14AA Wright, Miller & Cooper, *Federal Practice and Procedure* § 3702.5 at 494 (2011). Thus, calculation of the amount in controversy depends fundamentally upon the underlying substantive "right that the plaintiff seeks to enforce." At a minimum, there must be a logical nexus between the amount claimed to be in controversy and the underlying substantive right to be vindicated.

The Amended Complaint arrives at its jurisdictional numbers by multiplying $1,000 (purported statutory damages) times the alleged number of individuals attributed to a proposed class. But the defining characteristics for inclusion in the proposed class do not include any characteristics that would be essential or sufficient to entitle any class member to claim the $1,000. Thus, taking Plaintiff's allegations at face value, it appears to a legal certainty that the jurisdictional amount requirement is not satisfied in this instance.

Proposed "Class A" is a case in point. Class A is alleged to be a group of individuals -- said to total 417,000 -- whose ***sole*** defining characteristic is that their "***images were posted to or available on mugshots.com*** from January 1, 2010 to the present." Amended Complaint, ¶ 217

(emphasis supplied).[6]  As a matter of settled First Amendment law, that singular characteristic --

each proposed class member's already publically available images and information was posted

on a website -- cannot form the basis for any possible relief, sanction or statutory recovery (of

$1,000 or any other amount).  *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975).

The 417,000 number used to calculate the amount claimed to be in controversy is a bogus figure

because it is entirely divorced from the substantive claims being asserted or from any relief that

is sought.  That an individual's image was posted provides the Court with no basis for

concluding that the individual has any possibility of recovering $1,000; the alleged existence of

417,000 such individuals similarly provides no basis for concluding that any of them are entitled

to $1,000.  The use of the 417,000 figure in the Amended Complaint is thus tantamount to a

fraudulent assertion of jurisdiction.

Precisely the same calculation is used for -- and precisely the conclusion applies to --

every class proposed in the Amended Complaint.  Class B, for example, is identical to Class A,

except that it covers individuals in a larger geographic area (the entire United States) and, thus,

relies on a substantially larger number of individuals (over 21 million people whose images were

allegedly posted),[7] but again there is no allegation (nor could there be) that the alleged 21 million

members have any characteristics that could possibly entitle them to recover $1,000, or any other

amount.

_____

[6] Class A is alleged to consist of "all persons in the State of Illinois whose images were posted to or available on mugshots.com between January 1, 2010 and the present."  Amended Complaint, ¶ 217.

[7] Class B is alleged to consist of "all persons in the United States whose images were posted to or available on mugshots.com between January 1, 2010 and the present."  Amended Complaint, ¶ 223.  *See also Id.*, § 8.

In sum, the Amended Complaint on its face establishes that the amount in controversy requirement for original jurisdiction under the Class Action Fairness Act is not satisfied. From this it follows that the Amended Complaint fails to allege any ground on which the Court has subject matter jurisdiction over this case.

## IV. THE AMENDED COMPLAINT, IN ANY CASE, FAILS TO STATE ANY CLAIMS FOR WHICH RELIEF CAN BE GRANTED AGAINST MOVING DEFENDANTS.

Plaintiff commenced this proposed class action to restrain and "to put an end" to the publication of public records. At this juncture, however, the Court need not address the grave constitutional issues raised by Plaintiff's attempt to suppress lawful speech both prospectively (through an unlawful prior restraint by injunction) and retrospectively (through state statutory damages). Plaintiff's claims -- all based upon Right of Publicity and Consumer Fraud statutes of Illinois and Florida -- also fail for a number of independent statutory reasons. The Moving Defendants therefore request that this Court dismiss the Amended Complaint in its entirety for failure to state a claim for which relief may be granted.

### A. The Salient Facts Alleged in the Amended Complaint.

Mugshorts.com publishes public records that contain truthful information on matter of public interest and concern. The website displays arrest record information along with the arrestee's booking photo. Amended Complaint, ¶ 61. The booking photographs published on the website originate either "from department of corrections websites," *id.*, ¶ 98, or are lawfully obtained through Freedom of Information Act requests. *Id.*, ¶ 100. As with most websites, including the websites of most traditional news organizations, mugshots.com "sells advertising space on" the website. *Id.*, ¶ 113. Mugshots.com also offers to remove or correct the arrest information for a fee. *Id.*, ¶ 125. The arrestee has the option of using unpublish.com and/or

unpublishedarrest.com -- the alleged "billing and customer service agent for Mugshots.com" -- to remove or edit the arrest information.  *Id.*, ¶ 148.

Plaintiff Peter Gabiola "is a former inmate with the Illinois Department of Corrections ["IDOC"].  On or about July 27, 2012, Plaintiff exited parole."  Amended Complaint, ¶ 209.  While Mr. Gabiola was on parole, the IDOC posted his arrest information on their website; those records were removed from the IDCO website when he exited parole on July 27, 2012.  *Id.*  "After Plaintiff's records were posted on the IDOC website, mugshots.com posted a record for Plaintiff, with photograph, on its website."  *Id.*, ¶ 210.  "Mugshots.com currently contains a web page for Plaintiff, which includes a photograph."  *Id.*, ¶ 211.  Plaintiff allegedly called unpublisharrest.com and inquired about removing his image from the website, *id.*, ¶ 213, but is not alleged to have paid any fee or otherwise attempted to remove or edit his arrest information.

The Amended Complaint does not allege that Mr. Gabiola, a convicted felon, has suffered any cognizable loss or damage as a result of the complained of conduct.  It does ***not*** allege that Mr. Gabiola paid to have his booking information edited or removed or that mugshots.com or unpublisharest.com refused to do so.  It does not claim that Mr. Gabiola's booking photo and arrest information has commercial value that mugshots.com is using to promote a product or service.  It does not allege that Mr. Gabiola was tricked into paying more for a service than he otherwise would have as a result of some material misinformation on the website.

The Amended Complaint states that violations of the Illinois Right of Publicity Act ("IRPA") (Count I), the Illinois Consumer Fraud Act ("IFCA") (Count II and Count III), the Florida Right of Publicity Act ("FRPA") (Count IV), and the Florida Consumer Fraud Act

("FCPA") (Count V) have occurred.  It does not, however, allege facts sufficient to state a claim for which relief may be granted under any of those statutes.

**B.**    **The Standard for Rule 12(b)(6) Dismissal.**

Fed. R. Civ. P. 8(a) requires a complaint to offer more than naked assertions or mere conclusory recitations of the elements of the claims.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). Although the Court takes the well-pleaded facts as true, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

To survive a motion to dismiss, the factual allegations must be plausible on their face. *Iqbal*, 556 U.S. at 678-80; *Twombly*, 550 U.S. at 556.  The facts must do more than raise a "sheer possibility" that the defendant is liable.  *Id*.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). As discussed below, the Amended Complaint does not satisfy these requirements.

**C.**    **The Entire Amended Complaint Must Be Dismissed for Improper "Group" or "Block" Pleading.**

Courts in this Circuit have repeatedly held that complaints that lump together multiple defendants without differentiation, as does the Amended Complaint in this case, should be dismissed because a complaint must allege sufficient facts about each defendant to state a plausible claim.  *See*, *e.g.*, *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) ("We previously have rejected complaints that have 'lumped together' multiple defendants"); *Beaman v. Souk*, 2011 WL 832506, at *15 (C.D. Ill. Mar. 3, 2011) (failure to give "necessary individualized attention" to each defendant violated Rule 8); *Bank One, Okla., N.A. v.*

*Trammell Crow Servs., Inc.*, 2003 WL 23019173, at *2 (N.D. Ill. Dec. 23, 2003) (dismissing

claims against parent company lumped with subsidiary); *Watt v. City of Highland Park*, 2001

WL 1090152, at *2-3 (N.D. Ill. Sept. 13, 2001) (dismissing several defendants from

undifferentiated claim against all defendants); *Design Time, Inc. v. Synthetic Diamond Tech.,

Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ind. 1987) ("A complaint that attributes misrepresentations

to all defendants, 'lumped' together for pleading purposes, generally is insufficient.").

The group pleading in this case is especially egregious. Defendants are allegedly

comprised of 18 separate and distinct individuals and companies. Yet, the great bulk, if not all,

of Plaintiff's allegations improperly lump together all 18 individuals and companies together as

"Defendants," making no attempt to differentiate between either related or unrelated companies,

between different individuals and, most importantly, ***failing to specify which company or

individual supposedly did or said what, when, or where***. This pervasive group pleading makes

it impossible to tell what Plaintiff claims each Defendant did, and that by itself is a sufficient

reason to dismiss the Amended Complaint in its entirety and as to each Count. *See Suburban

Buick, Inc. v. Gargo*, 2009 WL 1543709, at *4 (N.D. Ill. May 29, 2009) (complaint's "many

broad references to 'Defendants'" were "wholly inadequate to put defendants on notice of the

conduct alleged").

> **D.      The Court Should Dismiss Count I Because Plaintiff's Claim for Violation of
> the Illinois Right of Publicity Act ("IRPA") is Both Time Barred and Not
> Plausible.**

> **1.      The IRPA Claim is Barred by the One-Year Statute of Limitations.**

The Amended Complaint alleges that "Plaintiff exited parole on July 27, 2012. When he

did so, IDOC removed his records from their website." *Id.*, ¶ 209. The logical inference from

this allegation is that the IDOC posted Plaintiff's arrest information prior to July 27, 2012 (*i.e.*,

18

there would be no records to remove unless they were posted prior to July 27, 2012). The Amended Complaint also alleges that "[a]fter Plaintiff's records were posted on the IDOC website, mugshots.com posted a record for Plaintiff, with photograph, on its website." *Id.*, ¶ 210. Taking these two allegations together, the logical inference is that mugshots.com posted Plaintiff's arrest information sometime before July 27, 2012 at a time when the information was still available on the IDOC website.

Plaintiff filed his initial complaint on November 24, 2014, Doc. 4, more than two years after his arrest record and photo were published on the mugshots.com. Accordingly, Plaintiff's claim is barred by the IRPA's one-year statute of limitations. *See Blair v. Nevada Landing P'ship.*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006); *see Berry v. Ford Modeling Agency*, 2010 WL 1930154 at *4 (N.D. Ill. May 13, 2010) ("the general rule is that the first publication of an image starts the one-year limitations clock in a right of publicity action[.]"); *Maremont v. Susan Fredman Design Group, Ltd.*, 772 F. Supp. 2d 967, 971 (N.D. Ill. 2011) ("the statute of limitations for [a] Illinois Right to Publicity Act claim is one year."); *Wells v. Talk Radio Network-FM, Inc.*, 2008 WL 4888992 at *2 (N.D. Ill. Aug. 7, 2008) ("courts have applied the one-year statute of limitations" to the Illinois Right of Publicity Act) (internal citations omitted).[8]

### 2. The IRPA Claim Also Fails Because the Arrest Information is Not Used to Endorse any Product or Service.

Mugshots.com does not use Plaintiff's booking photo to offer, advertise, or promote any product or service. The IRPA codified the common law right of publicity; it is designed to protect the commercial value of a person's identity. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d

---

[8] Even if Plaintiff were somehow able to establish that his claim did not arise until he exited parole on July 27, 2012, his claim would still be time barred.

905, 910 (7th Cir. 2005).  To state a claim under the IRPA, a party must allege: (1) an

appropriation of one's name or likeness; (2) without consent; (3) for a commercial purpose.  *See*

*Blair*, 369 Ill. App. 3d at 322.  The IRPA defines a "commercial purpose" as the public use or

holding out of an individual's identity (i) on or in connection with the offering for sale or sale of

a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting

products, merchandise, goods, or services; or (iii) for the purpose of fundraising. 765 ILCS

1075/5.

Far from suggesting that the Defendants capitalized on his identity to promote sales,

Plaintiff alleges that Defendants "monetized" his arrest information because the website contains

advertising and because the website offers to remove the information for a fee.  In other words,

there is neither an alleged "endorsement" by Mr. Gabiola nor a "product in question" in this case.

"***The basis of a right of publicity claim concerns the message - whether the plaintiff endorses,***

***or appears to endorse the product in question***."  *See Toney*, 406 F.3d at 910 (emphasis added)

Plaintiff's allegations are thus insufficient to establish the IRPA's "commercial purpose"

requirement and must be dismissed for that reason alone.

> **3.       The Publication of Arrest Information on Mugshots.com is for a Non-Commercial Purpose, as Defined by the IRPA.**

The IRPA expressly exempts from its ambit the use of an individual's identity for "non-

commercial purposes, including any news, ***public affairs*** or sports broadcast or account, or any

political campaign." 765 ILCS 1075/35(b)(2) (emphasis added).  Courts construe the IRPA's

non-commercial use exemption broadly to avoid First Amendment infirmity.  *See*, *e.g.*, *Best v.*

*Berard*, 776 F.Supp.2d 752, 758–59 (N.D. Ill. 2011).  As the Court stated in *Best*:

> The constitutional prohibition against laws abridging freedom of the press
> "greatly circumscribes the right even of a private figure to obtain damages for the

publication of newsworthy facts about him, even when they are facts of a kind that people want very much to conceal." *Haynes v. Alfred A. Knopf*, 8 F.3d 1222, 1232 (7th Cir. 1993). The Supreme Court has "repeatedly held that if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need ... of the highest order." *Bartnicki v. Vopper*, 532 U.S. 514, 527–28, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001) (citations and internal quotation marks omitted)…. The First Amendment's "core purposes" are implicated when the government—either directly or through a legal standard that imposes civil liability—"imposes sanctions on the publication of truthful information of public concern." *Id*. at 533–34, 121 S.Ct. 1753. In such cases, "privacy concerns give way when balanced against the interest in publishing matters of public importance." *Id*. at 534, 121 S.Ct. 1753.

776 F. Supp.2d at 757.

Here there is no question that the publication of an arrest photo is publication of a matter of public interest and concern:

> "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions … are without question events of legitimate concern to the public."

*Id.* (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S. Ct. 1029 (1975)); *see also Penwell v. Taft Broad. Co.*, 13 Ohio App.3d 382, 384, 469 N.E.2d 1025, 1027-28 (1984) (videotape footage of drug arrest); *Detroit Free Press, Inc. v. Oakland County Sheriff*, 164 Mich.App. 656, 665–66, 418 N.W.2d 124, 128 (1988) (booking photographs of bank robbery arrestee); *Williams v. KCMO Broad. Division-Meredith Corp.*, 472 S.W.2d 1, 3–6 (1971) (videotape footage of robbery arrestee); *see also Restatement (Second) of Torts*, § 652D cmt. f ("Those who commit crime or are accused of it ... may make every possible effort to avoid [publicity], but they are nevertheless persons of public interest, concerning whom the public is entitled to be informed.").

Because the publication of Plaintiff's arrest information implicates matters of public concern, the publication is for a non-commercial purpose as expressly defined by the IRPA. Indeed, it is difficult to conceive of an interpretation of the First Amendment that would render the use of arrest information in a publication a "commercial use" simply because the publication receives advertising revenue[9] or because the publisher offers to de-publish it for a fee. The website used Plaintiff's identity in a public affairs publication regarding a matter of legitimate public concern. That use is exempt from IRPA, and the IRPA claims should be dismissed for that reason as well.

### E. The Court Should Dismiss Count IV Because Plaintiff's Claim for Violation of the Florida Right of Publicity Act ("FRPA") is Not Plausible.

#### 1. Plaintiff's FRPA Claim should be Dismissed Because Plaintiff has not Alleged that he has been Personally Damaged by the Alleged Violation.

Plaintiff does not allege that he has been personally damaged by the alleged violation of the FRPA.[10] In order to obtain damages under Florida Statute §540.08, Plaintiff must first allege, and then conclusively demonstrate, the manner in which he was damaged. Fla. Stat. § 540.08 (damages for unauthorized publication are for "loss or injury sustained by reason" of the publication); *Stockwire Research Group, Inc. v. Lebed*, 577 F.Supp.2d 1262, 1269 (S.D. Fla.

---

[9] The publication of truthful matters of public concern is entitled to First Amendment protection, which protection cannot be lost simply because the publication in which the truthful information appears contains advertising. Indeed, the United States Supreme Court's seminal First Amendment case on matter of public concern involved a "paid advertisement." *New York Times Co. v. Sullivan*, 376 U.S. 254, 266, 84 S. Ct. 710, 719 (1964).

[10] Plaintiff prays for statutory damages in the amount of $1,000 for himself and for the other members of the purported class. However, those statutory damages are only available to members of the armed forces. Fla. Stat. § 540.08(3). Neither Plaintiff nor any member of any proposed class is alleged to be a member of the armed forces.

2008) ("[T]o recover monetary damages for … misappropriation under Fla. Stat § 540.08 [the plaintiff] must conclusively demonstrate the manner in which [the plaintiff] was personally damaged.").  Plaintiff has not alleged any facts showing that he was damaged.  Plaintiff's claim under Fla. Stat. § 540.08 should be dismissed for this reason alone.

> **2.** **Mugshots.com Does Not Use Arrest Photos to Directly Promote a Product or Service.**

"Under Fla. Stat. § 540.08, the terms 'trade', 'commercial', or 'advertising purpose' mean using a person's name or likeness to directly promote a product or service."  *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1212 (M.D. Fla. 2002); *Almeida v. Amazon.com, Inc*., 456 F.3d 1316, 1325 (11th Cir. 2006) ("Courts have interpreted the statute's commercial purpose requirement to require that a defendant's unauthorized use *'directly promote'* a product or service.") (emphasis added); *Valentine v. CBS, Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (same).

"The purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else."  *Tyne v. Time Warner Entm't Co.*, *L.P.,* 901 So.2d 802, 808 (Fla. 2005); *Loft v. Fuller*, 408 So.2d 619, 622-23 (Fla. 4th DCA 1981) (the statute applies when an advertiser "associates the individual's name or his personality with something else"). "The statute is not violated when a person's identity is used "in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising incidental to such uses.'"  *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F.Supp.2d 1352, 1360 (N.D. Fla. 2010) (quoting *Lane*, 242 F.Supp.2d at 1213).

Mugshots.com does not use the arrest photos to promote anything, let alone directly promote a service or product.  Plaintiff does not allege otherwise.  Instead, Plaintiff contends that

23

the website "monetizes" the arrest information, not because it is used to promote a product or service, but because 1) mugshots.com removes or edits the arrest information for a fee and 2) because the website receives advertising revenue. Amended Complaint, ¶ 274. Such use is simply insufficient to state a claim. The FRPA claim should be dismissed.

**F.** **The Consumer Fraud Claims, in Any Event, Should be Dismissed for Lack of Standing and Failure to Plead with Particularity.**

      **1.** **Plaintiff does not have Standing to Assert Claims Under Either the Illinois or Florida Consumer Fraud Statutes, because the Complaint Fails to Allege Facts to Show Actual Damages Caused by the Alleged Violations of the ICFA and the FCPA.**

A common element under each of the consumer protection laws alleged in the Complaint is that the plaintiff must allege facts to show that he suffered actual damage caused by the alleged violation of the Acts. Illinois courts are clear that "[p]rivate individuals have standing to litigate a violation [of the Consumer Fraud Act] only if they have actual damages." *People ex rel. Madigan v. United Const. of Am.*, 981 N.E.2d 404, 411 (1st Dist. 2012). Plaintiff alleges a cause of action under 815 ILCS 505/10a, Amended Complaint, ¶ 254, but does not allege that he suffered actual damage caused by the alleged violations of the ICFA.

> [A] private cause of action brought under section 10a(a) requires proof of "actual damage" (815 ILCS 505/10a(a) (West 1996)). Further, a private cause of action brought under section 10a(a) requires proof that the damage occurred "as a result of" the deceptive act or practice (815 ILCS 505/10a(a) (West 1996)). As noted previously, this language imposes a proximate causation requirement.

*Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002); *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill. 2d 359, 373, 695 N.E.2d 853, 861 (1998); *Amerigas Propane, L.P. v. BP America, Inc.*, 691 F. Supp. 2d 844, 851 (N.D. Ill. 2010) (dismissing consumer fraud act claims for failure to plead causation); *Thompson's Gas & Elec. Serv., Inc. v. BP America Inc.*, 691 F. Supp. 2d 860, 870 n.15 (N.D. Ill. 2010) (same); *Kim v. Carter's Inc.*, 598 F.3d 362, 365

(7th Cir. 2010) (A private party "must show 'actual damage' in order to maintain an action under the ICFA."). Plaintiff does not have standing under the ICFA because he has not suffered "actual damage as a result of the alleged violation of the" ICFA. 815 ILCS 505/10a.

Likewise, the FCPA allows only "a person 'who has suffered a loss' as a consequence of a violation of the statute to recover 'actual damages.'" *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. Dist. Ct. App. 2004) (quoting Fla. Stat. § 501.211(2)). "In the context of [the FCPA], 'actual damages' have been defined as 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Id.* (quotation omitted). Plaintiff does not, and cannot, allege that he suffered a loss for diminished value of the goods received. Plaintiff's FCPA claim should be dismissed.

### 2. Plaintiff's Consumer Fraud Claims should be Dismissed for Failure to Plead Fraud with Particularity.

A complaint sounding in fraud must meet both the plausibility standard of *Twombly* and *Iqbal*, and the particularity standard of Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff's fraud claims fail in both regards.

To satisfy the Rule 9(b) standard, the Complaint must detail the "who, what, when, where, and how" of the fraudulent conduct, *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), stating with particularity "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (quotations omitted).

The Complaint's consumer fraud allegations fail to allege what is fraudulent about the website; they do not specify what statements are actionable, what was fraudulent about any particular, unidentified statement, or how the statement caused damage. These are precisely the types of allegations that Rule 9(b) was designed to prevent from moving beyond the pleading stage. *See*, *e.g.*, *United States ex rel. Garst v. Lockheed-Martin Corp*., 328 F.3d 374, 378-79 (7th Cir. 2003) (lengthy complaint that failed to specify any statement or why it was false violated Rule 9(b)); *Amerigas Propane, L.P. v. BP America, Inc*., 691 F. Supp. 2d 844, 851 n.6 (N.D. Ill. 2010) (dismissing consumer fraud claim for failure to satisfy Rule 9(b)).

Rule 9(b)'s particularity requirement also means that claims against multiple defendants must specify the specific misconduct of ***each*** defendant. *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statement to 'defendants'"); *Brinker Capital Holdings, Inc. v. Imagex Servs.,* 178 F.R.D. 380, 384 (N.D.N.Y. 1998) ("It is not sufficient for a complaint to refer to all the defendants under the general term 'defendants' or refer to a defendant in an "and/or" manner. The complaint must be specific for each defendant."). *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992); 5 Wright & Miller, *Federal Practice and Procedure* § 1298, at 648 (1969).

## CONCLUSION

The Amended Complaint, and this case, should be dismissed in its entirety with prejudice for multiple independent reasons. Most fundamentally, the Amended Complaint fails to allege subject matter jurisdiction -- both because it does not allege any redressible injury to a legally protected interest sufficient to satisfy the threshold Article III injury-in-fact requirement and because it does not allege facts sufficient to establish diversity jurisdiction under 28 U.S.C.

§ 1332. Even if this Court did have subject matter jurisdiction (it does not), the Amended Complaint fails to state any claim for which relief may be granted (i) because of improper group pleading, (ii) because the requirements of the specific statutes relied upon are not met, and (iii), with respect to Counts II, III and V, it both fails to plead fraud with particularity as required by Rule 9(b) and fails to meet the applicable statutory standing requirements. The Amended Complaint, and this case, should in any event be dismissed as to Defendants Thomas Keesee and Marc Gary Epstein for the additional reason that this Court lacks *in personam* jurisdiction over them.

Dated: June 19, 2015                              Respectfully submitted,


                                        _____/s/ Michael A. Stick_____

                                        One of the Attorneys for These Defendants



Michael A. Stick
Emily G. Rottier Goebel
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, IL 60602-4257
Telephone:  312-444-9660
Facsimile:  312-444-9286

and

Adam D. Grant
Dickinson Wright PLLC
500 Woodward Ave., Suite 4000
Detroit, Michigan  48226

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that a true copy of the preceding Motion to Dismiss and Defendants Thomas Keesee, Marc Gary Epstein and Hammermill & Masterson, LLC, were served on June 19, 2015 on all counsel of record, in accordance with Fed. R. Civ. P. 5., Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Berton N. Ring    bring@bnrpc.com
Stuart M. Clarke   sclarkelaw.bnrpc@gmail.com
Adam D. Grant    agrant@dickinsonwright.com


                                      /s/ Michael A. Stick